[Cite as *State v. McClellan*, 2017-Ohio-4402.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016CA00142 |
| LEVANDER VICTOR MCCLELLAN | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Criminal appeal from the Stark County Court of Common Pleas, Case No.2016CR0465


JUDGMENT:         Affirmed


DATE OF JUDGMENT ENTRY:         June 19, 2017


APPEARANCES:

For Plaintiff-Appellee         For Defendant-Appellant

JOHN D. FERRERO         DONOVAN HILL
STARK COUNTY PROSECUTOR         116 Cleveland Avenue North
BY: KRISTINE BEARD         Canton, OH 44702
110 Central Plaza South
Canton, OH 44702

*Gwin, P.J.*

**{¶1}** Appellant Levander McClellan appeals his conviction after a jury trial in the Stark County Court of Common Pleas. Appellee is the State of Ohio.

*Facts & Procedural History*

**{¶2}** On April 5, 2016, appellant was indicted on one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(f), a felony of the first degree. A jury trial was held beginning on June 28, 2016.

**{¶3}** Andrew Hayden ("Hayden") an FBI agent, testified he met Cleveland Thomas ("Thomas"), a career drug trafficker, in 2015 when he went to the Wayne County Jail after Thomas was apprehended on drug trafficking charges. Hayden stated Thomas was facing quite a few years in prison and Hayden learned Thomas wanted to provide the FBI with intelligence. Hayden determined Thomas would be a useful source, so he spoke to the local prosecutor, who recommended Thomas' release from jail to work as an FBI informant.

**{¶4}** On January 29, 2016, Thomas worked with the FBI as a confidential informant for a controlled purchase of cocaine. Hayden testified about the procedures used when making a controlled purchase with a confidential informant, including: providing the source with audio and video recording devices; providing the source money for the transaction; providing surveillance; and meeting the source at a secondary location for debriefing. Hayden stated a confidential informant cannot go anywhere else after they meet with agents before they go to the location to make the purchase or after they make the purchase before they debrief with the agents. The agents know where the source is going from the time they meet them until the time the transaction is over because the

agents follow them and conduct surveillance. Prior to the purchase and after the purchase, an agent checks the informant and their vehicle for drugs and money.

{¶5} Hayden testified that on January 29, 2016, after Thomas contacted appellant to set up a drug buy, Hayden met Thomas in a local parking lot to initiate the controlled buy. When Thomas first went to appellant's house that day, he was unable to complete the buy because the cocaine was not ready. Thomas returned the funds to Hayden that the FBI provided for the buy.

{¶6} Approximately two or three hours later, Hayden again met Thomas in a local parking lot to initiate a controlled buy. Hayden spoke to Thomas about the plan, placed the recording device on Thomas, gave him $1,450 to buy one ounce of cocaine, searched Thomas, searched Thomas' vehicle, and began surveillance of Thomas. Hayden stated Thomas was under surveillance from the time he left the parking lot to when he arrived at appellant's home, an approximate ten minute drive. Hayden testified Thomas made no stops on his way to appellant's house. Further, Thomas made no stops on his return from appellant's house to the debriefing site.

{¶7} When Thomas arrived at the debriefing site, he gave Hayden one ounce of cocaine. Hayden testified his partner searched Thomas and his vehicle. Hayden reviewed the video from Thomas' recording device and confirmed the conversation Thomas relayed to him. Hayden saw appellant on the video and identified appellant as the individual he saw on the video giving cocaine to Thomas. Hayden informed Wayne County prosecutors that Thomas worked with the FBI and was successful in helping with a controlled purchase.

{¶8} On cross-examination, Hayden stated he did not check under the dashboard of Thomas' car. Further, that while Thomas was facing eleven years in prison, his prison sentenced was reduced to three years. Hayden did not feel it was necessary to record the phone conversation between appellant and Thomas to set up the buy because Hayden knew he would use video and audio if a controlled purchase occurred. The money given to Thomas was not photographed, but was digitally traced. The money was not recovered from appellant. Hayden stated there was no video of Thomas walking into appellant's home, but the agents were following Thomas and he was under surveillance.

{¶9} On re-direct, Hayden stated appellant was not arrested on January 29, 2016 because the FBI wanted to see if they could find his supplier and thus Hayden did not expect to find the money when they arrested appellant two weeks later. Hayden testified he uses confidential sources a lot, and when a confidential source sets up a deal, it is usually outside the FBI's presence due to the confidential source's lifestyle and because it takes days to develop these relationships. Further, the FBI does not have the time or assets to do twenty-four hour surveillance of all confidential informants. However, the FBI uses audio and video recording when the actual transaction occurs because that is where and when the criminal offense occurs.

{¶10} Timothy Alvord ("Alvord"), an FBI agent, testified he was with Hayden on January 29, 2016, he witnessed Hayden give the money to Thomas, took notes during the surveillance, and searched Thomas and his vehicle. Alvord did not search Thomas or his vehicle when he returned from appellant's home the first time since no purchase

was made.  The second time Thomas went to appellant's house, before Thomas left, Alvord searched him and his vehicle, and found nothing.

{¶11}  While other officers were conducting surveillance, Alvord would write down the notes called by these officers.  Alvord testified Thomas went straight to appellant's house from the meeting place and, after Thomas left appellant's house, he and Hayden followed Thomas to the debriefing spot.  Alvord does not remember if he searched Thomas at the debriefing site, but testified he did not search Thomas' vehicle.  Alvord testified Thomas gave Hayden the cocaine.

{¶12}  On cross-examination, Alvord stated he did not check under the dash when he searched Thomas' vehicle.  Alvord testified he was pretty confident he did not search the vehicle when Thomas came back to the debriefing site.  Alvord did not think Hayden searched the car again at that point either.

{¶13}  On re-direct, Alvord stated he was right behind Thomas to and from the buy and he made no movements like he was reaching under the dashboard.

{¶14}  Thomas testified he was in prison for three years for selling cocaine and has been in trouble for selling drugs before.  If he worked with the FBI, his sentence would be reduced from fifteen years to three years.  Thus, he was working with the FBI to benefit himself and he did so in order to get a lesser sentence.  Thomas previously bought drugs in Stark County, so he knew drug trafficking in the Stark County area.

{¶15} Thomas previously met appellant through a friend and was once at appellant's house. Because he previously went to appellant's house with a friend, Thomas knew he could purchase drugs from appellant.  Thomas testified when he made a phone call to appellant, appellant told him he would sell him drugs.

**{¶16}** Thomas met with agents before going to appellant's house and they searched him and his car. When Thomas went to appellant's house, appellant let him in, he purchased one ounce of cocaine, and left. Thomas testified he purchased the cocaine directly from appellant. Thomas identified appellant as the individual he purchased cocaine from the day of the controlled buy. Thomas identified Exhibit 1 as the video of the controlled buy in which appellant handed him one ounce of cocaine and Thomas paid either $1,400 or $1,450. Thomas stated the video contained the conversation he had with appellant, but he could not identify their faces on the video.

**{¶17}** After Thomas left appellant's house, he met with the FBI agents; the agents took the cocaine. Thomas stated the agents searched him after they took the cocaine from him. Thomas testified he did not stop his car on the way to appellant's house and did not stop after he left appellant's house before he met with the agents. Thomas stated appellant was the man who sold him cocaine that day.

**{¶18}** On cross-examination, Thomas testified he was caught with a large amount of cocaine in 2015 and was facing a fifteen-year prison sentence, which he viewed as a life sentence since he was seventy-one years old. Thomas stated he was desperate to get a lesser sentence. Thomas testified that when he returned to the agents after the buy, they searched him, patted him down from head to toe, and searched his vehicle.

**{¶19}** Jay Spencer from the Stark County Crime Lab testified Exhibit 2 contained 27.96 grams of a cocaine mixture.

**{¶20}** Michael Volpe ("Volpe"), a Canton police officer, was in charge of surveillance for the controlled buy on January 29, 2016. Volpe saw photos of Thomas and appellant, and established surveillance on the residence at 1505 – 4th Street. Volpe

saw Thomas' vehicle pull up in front of appellant's house, saw Thomas exit the vehicle, and saw Thomas go through the front door.  After several minutes, Volpe saw Thomas exit appellant's house and leave in his vehicle.

{¶21}  The jury found appellant guilty of one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(f), a felony of the first degree.  The trial court issued a judgment entry finding appellant guilty and issued a judgment entry sentencing appellant to nine years in prison.

{¶22}  Appellant appeals his conviction and assigns the following as error:

{¶23}  "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶24}  The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), in which the Ohio Supreme Court held:

> An appellate court's function when reviewing the sufficiency of the evidence
> to support a criminal conviction is to examine the evidence admitted at trial
> to determine whether such evidence, if believed, would convince the average
> mind of the defendant's guilt beyond a reasonable doubt.  The relevant
> inquiry is whether, after viewing the evidence in a light most favorable to the
> prosecution, any rational trier of fact could have found the essential elements
> of the crime proven beyond a reasonable doubt.

{¶25} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror" and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial order." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved only for the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶26} The trier of fact is best able to "view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264. Upon reviewing the evidence, the jury is free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render a defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (March 23, 2000). Indeed, the jurors need not believe all of the witnesses' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-603, 2003-Ohio-958.

{¶27} Appellant was found guilty of one count of trafficking cocaine pursuant to R.C. 2925.03(A)(1)(C)(4)(f), which states, in pertinent part:

No person shall knowingly do any of the following:

Sell or offer to sell a controlled substance or a controlled substance analog;

* * *

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine.

The penalty for the offense shall be determined as follows:

(f) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

{¶28} Appellant first contends his conviction was against the manifest weight of the evidence and sufficiency of the evidence because of flaws in procedure that compromised the running of the controlled buy with the confidential informant. Appellant argues: the agents forgot to search Thomas during the first part of the operation; the agents failed to record or preserve the conversations between appellant and Thomas; the agents never confirmed Thomas called appellant; the agents did not photograph the money; the agents did not recover the money from appellant; the agents did not search Thomas or his vehicle after the second debriefing; and the agents did not search under the dashboard in Thomas' vehicle.

{¶29} However, as to each of these arguments, there was conflicting evidence or evidence to explain this testimony. Hayden testified that during the first part of the

operation, Thomas was unable to complete the buy and Thomas returned the funds to Hayden that the FBI provided for the buy. Alvord testified Thomas was not searched since no purchase was made. Further, both Hayden and Alvord testified when they met Thomas again several hours later before the buy, they searched Thomas and his vehicle.

{¶30} Hayden testified he did not feel it was necessary to record the phone conversations between appellant and Thomas to set up the buy because Hayden knew he would use video and audio if a controlled purchase occurred. Additionally, Hayden stated he uses confidential informants a lot and when a confidential source sets up a deal, it is usually outside the FBI's presence due to the confidential source's lifestyle, because it takes days to develop these relationships, and the FBI does not have the time or the assets to conduct twenty-four hour surveillance on all confidential informants. However, Hayden stated the FBI uses audio and video recording when the actual transaction occurs since that is when the criminal offense occurs. Further, while there is no video recording of Thomas walking into appellant's house, Volpe testified he saw Thomas walking in and out of appellant's home.

{¶31} Hayden did not expect to recover the money from appellant, as he did not arrest appellant that day because the FBI wanted to see if they could find his supplier. While Alvord testified he did not search Thomas after the second debriefing, both Hayden and Thomas testified he did search Thomas and his vehicle after the second debriefing. Though neither Hayden nor Alvord searched under Thomas' dashboard, both Hayden and Alvord testified this was not unusual or a breach of protocol. Further, Alvord stated was right behind Thomas to and from the buy and he made no movements like he was reaching under the dashboard.

{¶32} Although appellant attempted to impeach the credibility of the confidential informant and cross-examined the confidential informant and other State witnesses regarding inconsistences in the testimony of each, the trier of fact was free to accept or reject any and all of the evidence offered by appellant and assess the witnesses' credibility.

{¶33} Appellant also attacks the credibility of the confidential informant, arguing he could not identify appellant on the videotape and that he was desperate and willing to do anything to avoid a life sentence. The jury heard about Thomas' motivation. Further, though Thomas had trouble seeing appellant on the video, he testified the video contained the conversation he had with appellant. Thomas also identified appellant in the courtroom as the person who sold him the ounce of cocaine. Thomas' testimony and his credibility were for the jury to weigh and determine.

{¶34} In this case, the jury heard the witnesses, viewed the video of the transaction, and heard appellant's argument.

{¶35} We find this is not an "exceptional case" in which the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The jury neither lost its way nor created a miscarriage of justice in convicting appellant of the charge.

{¶36} Appellant contends the State failed to present sufficient evidence to meet each element of the offense. R.C. 2925.03(A)(1)(C)(4)(f) sets forth the essential elements of trafficking in cocaine. To find appellant guilty of trafficking in cocaine in violation of R.C. 2925.03(A)(1)(C)(4)(f) as alleged in the indictment, the trier of fact would have to find appellant knowingly sold or offered to sell a controlled substance or a controlled

substance analog in an amount equal or exceeding twenty-seven grams, but less than one hundred grams, of cocaine.

{¶37} Thomas testified he went into appellant's home and gave appellant $1,450 for an ounce of cocaine. Thomas then left appellant's house and met agents at the debriefing location. Thomas was under constant surveillance to and from appellant's home. At the debriefing location, Thomas gave agents the cocaine he purchased from appellant and the recording equipment. Thomas identified the video recording as containing the conversation he had with appellant that day. Thomas identified appellant in the courtroom as the person who sold him the ounce of cocaine. Spencer testified Exhibit 2 contained 27.96 grams of a cocaine mixture.

{¶38} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant knowingly sold cocaine in an amount equal or exceeding twenty-seven grams. We find, therefore, that the State met its burden of production regarding each element of the crime of trafficking in cocaine and thus, there was sufficient evidence to support appellant's conviction.

{¶39} Appellant also contends his convictions are against the manifest weight and sufficiency of the evidence as the State failed to prove the weight of the pure cocaine in the cocaine-based mixture sufficient to support a first degree felony conviction. In support of his argument, appellant cites to the case of *State v. Gonzales*, ---- Ohio St.3d ----, 2016-Ohio-8319, -----N.E.3d ----- ("*Gonzales I*"), wherein the Supreme Court of Ohio held in prosecuting cocaine-possession offense involving mixed substances, the State must

prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold.

{¶40} However, upon reconsideration, in *State v. Gonzales*, ----- Ohio St.3d ----, 2017-Ohio-777, -----N.E.3d---- ("*Gonzales II*"), the Supreme Court vacated *Gonzalez I*, holding the entire "compound, mixture, preparation or substance" including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty * * *."

{¶41} Pursuant to the authority of the Ohio Supreme Court's opinion in *Gonzales II*, appellant's argument is overruled.

{¶42} Based upon the foregoing and the entire record in this matter, we find appellant's convictions are not against the sufficiency or the manifest weight of the evidence.  Appellant's assignment of error is overruled.

{¶43} The judgment of the Stark County Common Pleas Court is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur

[Cite as *State v. McClellan*, 2017-Ohio-4402.]